**ALLEN COUNTY CITIZENS FOR THE ENVIRONMENT, INC., et al., Plaintiffs,**

v.

**BP OIL COMPANY, et al., Defendants.**

**Civ. No. 3:89CV7690.**

United States District Court, N.D. Ohio, W.D.

Feb. 22, 1991.

Richard E. Siferd, Siferd & Siferd, Lima, Ohio, for plaintiffs.

Louis E. Tosi, Fuller & Henry, Toledo, Ohio, for defendants.

## OPINION AND ORDER

JOHN W. POTTER, District Judge:

This cause is before the Court on defendants' motion for summary judgment, plaintiffs' opposition and cross motion for partial summary judgment, and defendants' opposition to plaintiffs' motion for partial summary judgment and reply. Plaintiffs also filed a motion to supplement

the record which defendants oppose. Defendants filed a motion to strike the affidavit of plaintiffs' expert James A. Mihelcic which plaintiffs opposed. The Court has considered the merits of the respective memoranda. Plaintiffs brought suit under § 505 of the Clean Water Act, 33 U.S.C. § 1365, to enjoin what they perceived to be violations of the National Pollutant Discharge Elimination System (NPDES). Plaintiffs also seek the imposition of civil penalties against defendants and the award of attorney fees and expert witness fees incurred during the prosecution of this case.

Defendants admit that they are the owners/operators of the Lima, Ohio oil refinery which is the subject of plaintiffs' complaint. After performing various refining functions at the Lima plant, defendants discharge treated water into the Ottawa River. Plaintiffs claim that the water discharged from the Lima refinery has contained in the past and will contain in the future amounts of pollutants which are in excess of the limits provided for in the defendants' NPDES permit. Thus, plaintiffs claim that defendants have violated the Clean Water Act in the past and will continue to violate it in the future.

The Clean Water Act (the Act) can be found at 33 U.S.C. § 1251–1387 (1989). Unless authorized by the Act, it is illegal for anyone to discharge a pollutant into the navigable waters of the United States. 33 U.S.C. § 1311(a). However, § 1342 of the Act establishes the National Pollutant Discharge Elimination System (NPDES). Under § 1342(a), the Administrator of the United States Environmental Protection Agency is authorized to issue permits allowing an entity to discharge pollutants into the navigable waters of the United States so long as the entity discharging those pollutants complies with conditions specified in the Act. At § 1342(b), Congress permitted each state to establish and administer its own permit program if the program conforms to federal guidelines and the Administrator approves of it. Once a state has met the conditions specified in § 1342(b), the Act provides that the Administrator will stop issuing permits;

thus, the state becomes the government entity responsible for seeing to it that the holder of an NPDES permit complies with the law. The holder of the permit is, however, always subject to both state and federal enforcement actions if it fails to comply with the Act. 33 U.S.C. § 1319, 1342(b)(7). Should the state and federal government entities fail to enforce the Act, a private citizen may commence a civil action against any person alleged to be in violation of the conditions of either a state or federal NPDES permit. 33 U.S.C. § 1365(a)(1). If the citizen prevails in this type of action, the court is authorized to grant injunctive relief and/or impose civil penalties payable to the United States Treasury. 33 U.S.C. § 1365(a).

Pursuant to § 1342(b), Ohio applied for and was granted the authority to issue NPDES permits to interested parties. Chapter 6111 of the Ohio Revised Code contains the requirements which have been adopted in Ohio for an entity to obtain an NPDES permit. Pursuant to 33 U.S.C. § 1342 and Ohio Rev. Code Chapter 6111, the Ohio Environmental Protection Agency (Ohio EPA) has the authority to issue NPDES permits. Plaintiffs allege and defendants admit that the Ohio EPA granted defendants NPDES Permit No. 2IG00001*FD. This NPDES permit allows defendants to discharge pollutants into the Ottawa River from the Lima refinery and requires defendants to observe certain limitations on the pollutants which they discharge from the Lima refinery.

The provision in the United States Code which empowers a citizen to commence a lawsuit in a United States District Court against an entity which holds an NPDES permit reads as follows:

(a) **Authorization; jurisdiction.** Except as provided in subsection (b) of this section and section 1319(g)(6) of this title, any citizen may commence a civil action on his own behalf—

(1) against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the eleventh amendment to the Constitution) who is

alleged *to be in violation* of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation.

. . . . .

The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce such an effluent standard or limitation, or such an order, or to order the Administrator to perform such act or duty, as the case may be, and to apply any appropriate civil penalties under section 1319(d) of this title.

**(b) Notice.** No action may be commenced

(1) under subsection (a)(1) of this section—

(A) *prior to sixty days* after the plaintiff has given notice of the alleged violation (i) to the Administrator, (ii) to the State in which the alleged violation occurs, and (iii) to any alleged violator of the standard, limitation, or order, or

(B) if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order, but in any such action in a court of the United States any citizen may intervene as a matter of right. . . .

except that such action may be brought immediately after such notification in the case of an action under this section representing a violation of sections 1316 and 1317(a) of this title. Notice under this subsection shall be given in such a manner as the Administrator shall prescribe by regulation.

33 U.S.C. § 1365 (1989) (emphasis added). Defendants do not dispute that plaintiffs have complied with the notice provision contained in § 1365(b). On September 20, 1990, plaintiffs gave notice to all parties required by the statute that they intended to file suit. Plaintiffs commenced the cur-

rent action on December 14, 1990 by suing the United States EPA, the Ohio EPA, and the current defendants. Shortly thereafter, plaintiffs dismissed the United States EPA and the Ohio EPA from this lawsuit.[1] Therefore, the only defendants remaining in this action are BP Oil Company, Sohio Oil Company, and the Standard Oil Company. None of these defendants have disputed that they either have operated in the past or presently operate the Lima refinery.

The Court begins its analysis of plaintiffs' claims with an examination of the United States Supreme Court decision in *Gwaltney of Smithfield Ltd. v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987). Speaking for the majority, Justice Marshall said that "[t]he most natural reading of [the requirement in § 1365(a) that a defendant must be alleged] 'to be in violation' is a requirement that citizen-plaintiffs allege a state of either continuous or intermittent violation—that is, *a reasonable likelihood that a past polluter will continue to pollute in the future.*" *Gwaltney*, 484 U.S. at 57, 108 S.Ct. at 381. The Court made this point clear by reversing the decisions of both the district court and the court of appeals which had allowed a citizen-plaintiff to maintain an action in federal court based solely on allegations of past violations. *Id.*, at 64, 108 S.Ct. at 384.

■ Plaintiffs begin their opposition to defendants' motion for summary judgment by identifying 43 occasions between January 9, 1986 and June 12, 1989 where defendants apparently exceeded the effluent limitations for contaminants covered in their NPDES permit. Later in their memorandum, plaintiffs argue in the words of Justice Marshall: "The statute [33 U.S.C. § 1365(a) (quoted above) ] does not require that a defendant 'be in violation' of the Act at the commencement of the suit; rather, the statute requires that a defendant be '*alleged* to be in violation.' " Plaintiffs' Brief at 7 (citing *Gwaltney*, 484 U.S. at 64,

---

**1.** Neither the United States EPA nor the Ohio EPA have commenced or are prosecuting an action similar to the one brought by plaintiffs

here. Therefore, 33 U.S.C. § 1365(b)(1)(B) is not a bar to the prosecution of this case.

108 S.Ct. at 384). Plaintiffs apparently are of the belief that this holding in *Gwaltney* makes it possible for a plaintiff to successfully avoid summary judgment by simply reciting the allegations the plaintiff made in the complaint. For this argument to be persuasive in light of other Supreme Court decisions, the Court must have included language in the *Gwaltney* opinion which demonstrated an intent to alter the standard a court should employ in ruling upon a motion for summary judgment. However, the *Gwaltney* Court itself rejected plaintiffs' theory when it said the following.

This is not to say, however, that such allegations may not be challenged. In *United States v. SCRAP*, 412 U.S. 669, 689 [93 S.Ct. 2405, 2416, 37 L.Ed.2d 254] (1973), we noted that if the plaintiffs' "allegations [of standing] were in fact untrue, then the [defendants] should have moved for summary judgment on the standing issue and demonstrated to the District Court that the allegations were sham and raised no genuine issue of material fact." If the defendant fails to make such a showing *after the plaintiff offers evidence to support the allegation*, the case proceeds to trial on the merits, where the plaintiff must prove the allegations in order to prevail. But the Constitution does not require that the plaintiff offer this proof *as a threshold matter* in order to invoke the District Court's jurisdiction.

*Gwaltney*, 484 U.S. at 65–66, 108 S.Ct. at 385–86 (emphasis added). The Court considers this excerpt clear evidence that the Supreme Court left unchanged the mechanism by which a court may decide a motion for summary judgment.

Since the *Gwaltney* Court clearly did not alter the standard by which courts are to decide motions for summary judgment, the Court must proceed to analyze plaintiffs' claims within that context. The standard the Court uses for resolving motions for summary judgment can be expressed in the following manner.

Under the Federal Rules of Civil Procedure, summary judgment is proper only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The Supreme Court has recently stated that the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, [477 U.S. 242] 106 S.Ct. 2505, 2512 [91 L.Ed.2d 202] (1986).... In reviewing a motion for summary judgment, however, all inferences " 'must be viewed in the light most favorable to the party opposing the motion.' " *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, [475 U.S. 574] 106 S.Ct. 1348, 1356–57 [89 L.Ed.2d 538] (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 [82 S.Ct. 993, 994, 8 L.Ed.2d 176] (1962)).

*Ralph Shrader, Inc. v. Diamond International Corp.*, 833 F.2d 1210, 1213 (6th Cir. 1987).

▮ The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any' which [he] believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The substantive law of the case identifies which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Therefore, only disputes of facts affecting the outcome of the suit under the applicable substantive law will preclude the entry of summary judgment. *Id.* A moving party may discharge its burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 324–325, 106 S.Ct. at 2553. Where the moving party has met its initial burden, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250, 106 S.Ct. at

2511. "[P]laintiff, to survive the defendant's motion, need only present evidence from which a jury might return a verdict in his favor." *Id.* at 257, 106 S.Ct. at 2514.

In keeping with its burden under this standard, defendants have asserted as the basis for their motion that there is no evidence from which the plaintiffs can prove an *ongoing violation* of the NPDES permit at the Lima refinery. Defendants claim that, though violations may have occurred in the past, the causes for those violations have been rectified and any current exceedance in effluent flow from the Lima refinery is attributable to conditions which are certain not to reoccur. Defendants further state that any exceedance in the amount of a pollutant in the effluent being discharged from the Lima refinery into the Ottawa River that has occurred recently is due to conditions which are certain not to reoccur, and therefore, such exceedances do not constitute a violation of their permit. Defendants have offered affidavits to support the arguments they make.

■ In examining the law in this area, the Court has relied upon the Supreme Court's *Gwaltney* decision and the subsequent decisions, after remand, by the United States Court of Appeals for the Fourth Circuit and the United States District Court for the Eastern District of Virginia. The later two courts were required to answer questions not resolved by the Supreme Court's opinion in *Gwaltney.* It does not appear that the United States Court of Appeals for the Sixth Circuit has addressed the issues raised in this case. From an examination of the *Gwaltney* decisions, the Court entertains no doubt that the sole issue for resolution is whether there is proof to support plaintiffs' allegations that there were ongoing violations at the time plaintiffs filed suit. In *Gwaltney* the Supreme Court reversed the lower courts' decisions to permit plaintiffs to proceed with claims based on past violations. Instead, the Court required the plaintiffs to prove "a state of either continuous or intermittent violation." *Gwaltney,* 484 U.S. at 57, 108 S.Ct. at 381. On remand, the Fourth Circuit elaborated on the Supreme Court's holding.

We remand to the district court for further findings as to whether, on the merits, plaintiffs proved at trial an ongoing violation. Citizen-plaintiffs may accomplish this either (1) by proving violations that continue on or after the date the complaint is filed, or (2) by adducing evidence from which a reasonable trier of fact could find a continuing likelihood of a recurrence in intermittent or sporadic violations. Intermittent or sporadic violations do not cease to be ongoing until the date when there is no real likelihood of repetition.

*Chesapeake Bay Foundation v. Gwaltney of Smithfield,* 844 F.2d 170, 171–72 (4th Cir.1988). Though the above test was fashioned by a court of appeals for use by a trial court which had already allowed the case to proceed through trial, this Court sees no reason preventing it from applying this test to a motion for summary judgment. Therefore to survive defendants' motion, plaintiffs must present evidence that demonstrates either (1) that violations continued on or after the date the complaint was filed, or (2) that a reasonable trier of fact could find a continuing likelihood of a recurrence in intermittent or sporadic violations.

■ The first real dispute in the law which the parties have briefed regards the implementation of the above stated test. Defendants cite the Fourth Circuit's decision in *Gwaltney* and argue that plaintiffs must show an ongoing violation separately as to each pollutant parameter at issue. When the Fourth Circuit sat for the third time to consider *Gwaltney,* the panel reversed the district court and made the following ruling.

CBF [the plaintiff] contends that the jurisdictional requirement of § 1365 refers to finding an ongoing violation of the *permit;* having done so, the court may then impose penalties for any past violation of any permit *parameter:* We do not think the statutory language can support that position. Section 1365(a) permits citizen suits against persons alleged

to be in violation of "an effluent standard or limitation." Penalties under § 1319(d) may be assessed for violations of "any permit condition or limitation." The entire structure of the Clean Water Act and regulations involves identifying specific pollutants and setting a permit limit for each pollutant of concern. It thus makes sense within this scheme to view each parameter separately for purposes both of determining ongoing violation and of assessing penalties. [FN7] *Chesapeake Bay Foundation v. Gwaltney of Smithfield*, 890 F.2d 690 at 698 (4th Cir.1989) (footnote omitted). In footnote 7 of the above quoted holding, the Fourth Circuit found further support for its conclusion in Congress' 1987 amendment of 33 U.S.C. § 1319. With that amendment, Congress changed § 1319 to allow penalties of "$25,000 per day for *each* violation," where the section had previously allowed penalties of "$10,000 per day of *such* violation." *Id.*, 890 F.2d at 698. Congress also added the provision that, "[f]or purposes of this subsection, a single operational upset which leads to simultaneous violations of more than one pollutant parameter shall be treated as a single violation." *Id.* The court found that these changes were further evidence that Congress intended that courts treat each pollutant parameter separate and apart from other parameters.

In response, plaintiffs rely upon an opinion from a federal district court in Delaware to argue that they are not required to show an ongoing violation for each pollutant parameter. In *Natural Res. Defense Council v. Texaco Refining*, 719 F.Supp. 281 (D.Del.1989), the court was confronted with cross-motions for summary judgment in an action by private citizens to enforce the Clean Water Act. Though that Court did not consider the Fourth Circuit's holding mentioned above, the defendant in that case made a similar argument to the one made by the defendant in *Gwaltney* and the defendants in this case. Specifically, the court said: "[d]efendant contends that plaintiff's Complaint must be examined on a parameter-by-parameter basis, that this court has jurisdiction only over those claims relating to parameters for which

plaintiffs can in good faith allege continuing violations, and that summary judgment must therefore be granted in its favor on claims relating to all other parameters." *Natural Res. Defense Council*, 719 F.Supp. at 286. In response, the court held the following:

> Nothing in the language of the [Clean Water Act] or the Supreme Court's opinion in *Gwaltney* supports the cumbersome jurisdictional analysis defendant insists is required. Instead, once a citizen suit has been properly commenced and subject-matter jurisdiction shown to lie, the court should be permitted to consider past, present, and potential future violations.

*Id.* at 287.

While the Delaware district court certainly attempted a thoughtful approach to a difficult problem, the facts of its case cannot support the broad sweeping holding for which plaintiffs cite it. In the paragraph immediately following the above quoted holding, the court said: "[d]efendant concedes that plaintiffs have shown ongoing violations of 'several effluent limits of its NPDES permit.'" *Id.* As the defendant in that case had already conceded ongoing violations, the Court had jurisdiction to decide the case. By making this concession, the defendant in *Natural Res. Defense Council* had also conceded the jurisdiction issue. After such a concession, the most the court could consider was whether plaintiffs were entitled to relief on those pollutant parameter violations which had existed only in the past. As mentioned above, the Supreme Court has found that such past violations do not provide any basis for jurisdiction. See *Gwaltney*, 484 U.S. at 57, 108 S.Ct. at 381. Therefore, even under the most generous construction of *Natural Res. Defense Council*, the case stands only for the proposition that a private citizen may be afforded relief for violations which occurred only in the past if the plaintiff successfully demonstrates that the defendant is committing an ongoing violation of another pollutant parameter. Given that the facts in *Natural Res. Defense Council* do not support the broad holding for which

plaintiffs cite it and also given that the Fourth Circuit's holding in *Gwaltney* appears to more closely comport with the intent of Congress, the Court will follow the holding announced by the Fourth Circuit in *Gwaltney*.

In the NPDES permit issued to defendants, the Ohio EPA imposed limits upon thirteen types of pollutants that may be present in defendants' waste water. The thirteen regulated pollutants are Dissolved Oxygen (DO), Biochemical Oxygen Demand (BOD), Chemical Oxygen Demand (COD), total suspended solids (TSS), Oil and Grease, Ammonia (NH3), Phosphorus (P), Cyanide, Sulfide, Hexavalent Chromium (Cr + 6), Total Chromium (Cr), Phenols, and pH. In Exhibit A to their complaint and again in their memorandum in support of their motion for summary judgment, plaintiffs list every instance prior to the date the complaint was filed on which defendants reported an exceedance of a pollutant regulated by their NPDES permit. Plaintiffs introduce evidence of two more exceedances in their summary judgment memorandum and three more exceedances in their memorandum in support of their motion to supplement the record.

■ Plaintiffs have not presented evidence that the defendants ever reported an exceedance in the amount of pH in their effluent. Hence, plaintiffs have shown no continuing violation as to that pollutant.

■ The only evidence plaintiffs bring forth concerning an exceedance in the regulated COD is the exceedance defendants reported on May 14, 1986. Since no reported exceedance in COD has been demonstrated since that time, no genuine issue of material fact exists regarding whether plaintiffs have demonstrated a continuing violation of the proscribed limit for COD. Therefore, plaintiffs' evidence regarding this pollutant parameter does not support jurisdiction.

■ Plaintiffs' evidence of a continuing violation in the amount of DO present in defendants' effluent consists of five occasions when defendants reported exceedances in the amount of DO present in their effluent. These exceedances occurred June 19, 1986, June 16, 1986, June 12, 1986, May 19, 1986, and May 15, 1986. Plaintiffs have presented no evidence of a reported exceedance occurring after June 19, 1986. These 1986 exceedances do not raise a genuine issue of material fact regarding whether there is an ongoing violation of defendants' NPDES permit parameter for DO. Therefore, evidence relating to this pollutant parameter cannot serve to support jurisdiction.

■ Plaintiffs evidence of a continuing violation of the amount of TSS in defendants' effluent consists of two occasions when defendants reported TSS exceedances. These exceedances occurred on June 11, 1986 and June 19, 1986. Plaintiffs have presented no evidence of a reported exceedance of this pollutant occurring after June 19, 1986. Like the exceedances for DO, the evidence of TSS exceedances does not raise a genuine issue of material fact regarding whether there is an ongoing violation of the permit. Therefore, the evidence of TSS exceedances provides no basis for the continuing jurisdiction of this Court.

■ In support of their contention that there is an ongoing violation of the permit level for Cyanide, plaintiffs offer proof of exceedances that occurred on July 6, 1986, July 16, 1986, July 27, 1986, July __, 1986, and August 26, 1987, and September 13, 1987. Plaintiffs have offered no proof of an exceedance in the amount of Cyanide occurring after September 13, 1987. No exceedance in the amount of Cyanide in the Lima refinery effluent has been reported during the pendency of this case. Therefore, plaintiffs have failed to demonstrate a continuing violation of defendants' NPDES permit as it relates to the amount of Cyanide permissible in the Lima refinery effluent. Plaintiffs' evidence of Cyanide exceedances does not support the continuing jurisdiction of this Court.

■ Plaintiffs next contend that evidence of sulfide exceedances demonstrates a continuing violation of defendants' NPDES permit. Plaintiffs cite to exceedances which occurred on June 11, 1986,

July 2, 1986, and July ___, 1986. The last reported exceedance in the amount of sulfides in defendants' effluent occurred on this unspecified date in July of 1986. Since the last reported exceedance occurred in 1986, the Court finds no genuine issue of material fact relating to whether there are continuing violations of the pollutant parameter for sulfides. Therefore, plaintiffs' evidence of sulfide exceedances does not support the continuing jurisdiction of this Court.

■ Next, plaintiffs claim ongoing violations in the amount of phenols in the Lima refinery effluent. Defendants reported only one exceedance in the amount of phenols, and it occurred on July 2, 1986. As a matter of law, the Court finds that one exceedance does not constitute an ongoing violation. Therefore, plaintiffs' evidence of the phenols exceedance provides no support for the continuing jurisdiction of this Court.

Defendants' NPDES permit contains limitations on two types of chromium: total chrome and hexavalent chrome. Plaintiffs claim ongoing violations of both types of pollutants. The Court finds that plaintiffs attempt to prove a continuing violation of the pollutant parameter for total chrome is as ill-fated as their attempt to prove a continuing violation for the level of phenols. Plaintiffs have offered proof of only one exceedance in the amount of total chrome present in the Lima refinery effluent. This exceedance occurred in February of 1989. No other exceedance is mentioned as occurring either prior to or subsequent to this exceedance. Again, one exceedance does not constitute a continuing violation. Plaintiffs' evidence of the total chrome exceedance provides no basis for the continuing jurisdiction of this Court.

Plaintiffs' allegation of a continuing violation in the level of hexavalent chrome is a more difficult question. Plaintiffs cite six occasions when the effluent from defendants' Lima refinery contained levels of hexavalent chrome that exceeded the amount allowed by their NPDES permit. These exceedances occurred on January 23, 1989, February 6, 1989, February 13, 1989,

February ___, 1989, March ___, 1989, and April 2, 1989. After plaintiffs gave the statutory 60–day notice, a seventh hexavalent chrome exceedance occurred in October of 1989. No further exceedances in the level of hexavalent chrome have been reported during the pendency of this case. Plaintiffs cite *Hallstrom v. Tillamook*, 493 U.S. 20, 110 S.Ct. 304, 107 L.Ed.2d 237 (1989), to argue that an exceedance occurring after a plaintiff gives the statutory 60 day notice, but before the lawsuit is filed, is just as significant as an exceedance occurring after the lawsuit is filed. Therefore, plaintiffs argue that they have presented sufficient evidence of an ongoing violation.

Defendants counter by arguing, first, that the cause of the early 1989 exceedances was corrected and that the October, 1989 exceedance resulted from a problem, wholly separate from the earlier problem, which has no chance of repeating itself until 1996. Thus, defendants argue that the seven 1989 exceedances are not evidence of a continuing violation. Second, defendants argue that *Gwaltney* establishes the date of the complaint as the time for determining whether there are any ongoing violations. See *Chesapeake Bay Foundation v. Gwaltney of Smithfield, Ltd.*, 844 F.2d 170, 171 (4th Cir.1988) (plaintiff must "prove that violations continue[d] on or after the date the complaint was filed"). Defendants argue that since the last hexavalent chrome exceedance occurred two months *prior* to the filing of the complaint, plaintiffs have failed to establish an ongoing violation under the applicable standard.

■ The *Hallstrom* case cuts against, rather than provides support for, plaintiffs' argument. In *Hallstrom,* the Supreme Court was called upon to interpret the meaning of a 60–day notice provision in the Resource Conservation and Recovery Act of 1976 (RCRA), 42 U.S.C. § 6972 (1982 ed. and Supp. V). The 60–day notice provision in the Clean Air Act was patterned after the one in RCRA. *Hallstrom,* 110 S.Ct. at 301 n. 1. The Court said " '[a]bsent a clearly expressed legislative intention to the contrary,' the words of the

statute are conclusive." *Id.* at 310 (quoting *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)). The Court went on to find that the "notice gives the alleged violator 'an opportunity to bring itself into compliance with the Act and thus likewise render unnecessary a citizen suit,'" *Id.* (quoting *Gwaltney*, 484 U.S. at 60, 108 S.Ct. at 383), and that the "[g]iving full effect to the words of the statute preserves the compromise struck by Congress." *Id.* Thus, the *Hallstrom* Court recognized that Congress meant to differentiate between the act of giving notice and the act of filing a complaint. Since Congress intended the act of giving 60 days notice to have consequences separate and apart from the act of filing the complaint, it would be inconsistent to conclude that an exceedance occurring after a plaintiff has given 60 days notice but before he files the complaint has the same effect as an exceedance that occurs after the complaint has been filed. Therefore, like the Fourth Circuit in *Gwaltney*, the Court holds that the plaintiff must ultimately "prove that violations continued on or after the date the complaint was filed." *Gwaltney*, 844 F.2d at 171. An exceedance occurring prior to the date the complaint was filed, whether occurring before or after the date of the 60–day notice, does not satisfy this burden. At this stage of the proceedings, plaintiffs need only come forward with some evidence of a violation *after* plaintiffs filed the complaint. As plaintiffs have failed to come forward with proof of a hexavalent chrome exceedance occurring after the date the complaint was filed, they have failed to create a genuine issue of material fact as to whether defendants are guilty of a continuing violation. Therefore, plaintiffs evidence of hexavalent chrome exceedances does not provide a basis for the continuing jurisdiction of this Court.[2]

In their motion for partial summary judgment, plaintiffs go on at some length about defendants' July 1, 1986 exceedance in the amount of oil and grease in the effluent discharged from the Lima refinery. Other exceedances in the amount of oil and grease occurred on January 9, 1986, January 16, 1986, June 12, 1986, July 3, 1986, and June 12, 1989. The 1986 exceedances resulted in three separate administrative enforcement actions being filed by the Ohio EPA, the Ohio Department of Natural Resources, and the U.S. Coast Guard against defendants. The three actions were resolved, and defendants were required to pay $63,000 in penalties to the Ohio EPA, $4,500 in penalties to the Coast Guard, and $90,000 to the Ohio Department of Natural Resources. Defendants were also required to spend $4,000,000 to clean the Ottawa River. The EPA required defendants to make various improvements to their treatment facility to remedy the problem which caused the 1986 exceedances. Apparently, the improvements made by defendants corrected the problem which existed in 1986, as no exceedance in the amount of oil and grease reoccurred until June 12, 1989. Plaintiffs have presented no evidence of an oil and grease exceedance occurring after June 12, 1989. Thus, the June 12, 1989 exceedance is the key to determining whether plaintiffs have produced evidence of a continuing violation.

What the Court said above in analyzing the evidence of the October, 1989 hexavalent chrome exceedance applies here with equal force. The June 12, 1989 oil and grease exceedance occurred two months prior to the date the 60–day notice was given and six months before the complaint was filed. Plaintiffs have not come forward with any evidence of an oil and grease violation occurring after June 12, 1989. Given plaintiffs' failure to present

---

**2.** Alternatively, the Court finds the absence of a genuine issue of material fact of an ongoing violation since the exceedances in early 1989 sprang from a cause wholly unrelated to the cause of the October, 1989 exceedance. Defendants have offered the affidavit of Jerome Grammas to support their contention that the cause of the first six exceedances was unrelated

to the cause of the October 1989 exceedance, while the plaintiffs have not countered defendants' affidavits with proof to the contrary. The Court finds it implausible to believe that an ongoing violation of a pollutant parameter may be established when unrelated problems cause the different exceedances.

proof on this crucial issue, the Court finds that plaintiffs have failed to create a genuine issue of material fact regarding whether there is an ongoing violation of defendants' oil and grease pollutant parameter. The evidence of oil and grease exceedances does not provide a basis for continuing jurisdiction.[3]

■ The next pollutant parameter which plaintiffs allege that defendants continue to violate is the one for ammonia. Plaintiffs have presented evidence of ammonia exceedances occurring on February 26, 1986, June 9, 1,986, June 11, 1986, July 6, 1986, July 9, 1986, and July —, 1986. Plaintiffs memorandum in support of their motion for partial summary judgment also makes prominent mention of an exceedance for ammonia occurring in June of 1990, six months *after* the complaint was filed. Defendants assert that the refinery had not had a single exceedance of any permit limit for ammonia from the period of time beginning August, 1986 and ending December, 1990; some 41 months. Defendants support this assertion with the affidavit testimony of Jerome Grammas. Grammas Affidavit at 22. Plaintiffs fail to refute this testimony with evidence of their own, and in addition, no evidence of an ammonia exceedance occurring after June 25, 1990 has been presented. In addition, defendants claim that a malfunction in the software controlling the Sour Water Stripper caused the June, 1990 exceedance and that the refinery has fixed the software problem so that such a malfunction will not occur in the future. Defendants, once again, offer the Grammas affidavit to backup these assertions, Grammas Affidavit at 22, while plaintiffs offer no evidence to the contrary.

The Court need not rule on the cause of the problem or the likelihood of its reoccurrence. As the Court said earlier, evidence of one exceedance is insufficient as a matter of law to raise a genuine issue of material fact as to whether there is a *continuing* violation. The existence of a 41 month span of time in which not a single exceedance of the permit limit for ammonia was reported considerably lessens the relevancy of the 1986 exceedances. Without relevant evidence of past exceedances, the June, 1990 exceedance stands as a single, isolated occurrence. Therefore, the Court finds that plaintiffs have failed to raise a genuine issue of material fact as to whether defendants are guilty of an ongoing violation of their permit limit for ammonia, and plaintiffs' evidence of ammonia exceedances provides no support for the continuing jurisdiction of this Court.

■ Next, plaintiffs claim that defendants continue to violate the NPDES permit limit for Biological Oxygen Demand (BOD). In support, plaintiffs have produced evidence of permit exceedances that occurred June 11, 1986 and July 2, 1986. In their memorandum in support of their motion to supplement the record, plaintiffs introduce evidence of excess BOD in the 24 hour composite sample taken September 9 and 10, 1990 and in the 24 hour composite sample taken September 16 and 17, 1990. At first glance, the two exceedances which occurred in September, 1990 appear to be sufficient evidence of a continuing violation. However, two factors diminish their significance. First, defendants assert that in the 42 months preceding the date the complaint was filed no exceedance of the permit limitation for BOD occurred. The affidavit of Jerome Grammas confirms this allegation. Grammas Affidavit at 17.

---

**3.** Alternatively, the Court finds no evidence that the June 12, 1989 exceedance was a violation of defendants' permit. To the contrary, defendants have introduced the affidavit of Jerome Grammas to counter plaintiffs' allegations. Mr. Grammas is the Senior Environmental Engineer for defendants, Lima refinery. Mr. Grammas opines that the June 12, 1989 exceedance resulted when the effluent sample for that day was affected by a short term "spike" in the oil and grease concentrations. Therefore, Mr. Gram-

mas opines that the sample used to determine that there was an exceedance was not an accurate representative of the average oil and grease concentration for that day. Grammas Affidavit at 18. Since Mr. Grammas doubts the accuracy of the sample used to determine that there was an exceedance, he likewise concludes that there was no violation of the permit. Plaintiffs have presented no affidavits or other supporting materials to contradict the assertions made by Mr. Grammas.

Next, defendants point out the obvious fact that the September exceedances took place some ten months after the complaint was filed. Also relevant is the fact that no exceedance in the BOD limit has been reported since. Defendants further attempt to explain that these exceedances were due to a "once in a 25–year storm event" and are therefore not violations of their permit.

In response, plaintiffs acknowledge that the September, 1990 BOD exceedances were in fact due to high storm water flows but go on to argue that the exceedances nonetheless demonstrate a continuing violation because defendants have inadequate treatment facilities. This inadequate treatment facility theory appears to be the ground upon which plaintiffs attempt to attach significance to their allegation that "[m]ost of defendant's violations have occurred at a time in variation in flows such as from rain, or startups and shutdowns." Plaintiffs also try to create a genuine issue of material fact regarding the adequacy of defendants' treatment facility by introducing the affidavit of James Mihelcic. Mr. Mihelcic opines that

> "[b]iological treatment processes such as used by B.P. Oil to treat its wastes are not always responsive to immediate changes in operations because microorganisms used to break down the substances are not always responsive to immediate changes. This facility has variations in influent flow rate and contaminant loadings which this type of system and/or the operators cannot handle."

Mihelcic Affidavit at 1–2. Nowhere in his affidavit does Mr. Mihelcic provide any insight into how he came to develop such a thorough understanding of the defendants' Lima refinery facilities. Also noticeably absent is any evidence, or even allegation, that the microorganisms that were supposedly used by defendants to meet the NPDES permit limit for BOD failed to effectively control the level of BOD on September, 1990. Likewise, the Court finds no evidence from which a trier of fact could find that in September of 1990 the operators of the Lima refinery were prevented from handling the level of BOD due to a variation in the influent flow rate or con-

taminant loading. Plaintiffs simply present unsupported accusations regarding the Lima refinery and argue that a trier of fact should be allowed to speculate as to whether the exceedances which occurred in September of 1990 occurred as a result of the alleged deficiencies. Defendants, in contrast offer Grammas' affidavit which describes in painstaking detail how the treatment facility is the "best available technology economically achievable." Grammas Affidavit at 15. These reasons alone are sufficient to lead the Court to find that plaintiffs have failed to raise a genuine issue of material fact about whether the September, 1990 BOD exceedances are evidence of a continuing violation.

The second reason why the Court finds the absence of a genuine issue of material fact relates to the language in the Clean Water Act. As was mentioned above, the Fourth Circuit pointed out that in 1987 Congress amended 33 U.S.C. § 1319 to provide that "[f]or purposes of this subsection, a single operational upset which leads to simultaneous violations of more than one pollutant parameter shall be treated as a single violation." The Fourth Circuit found that this change was evidence that Congress intended that non-upset violations be treated on a parameter-by-parameter basis. *Gwaltney*, 890 F.2d at 698 n. 7. In addition, this Court finds that this amendment also expressed Congress' intent to treat a single upset as a single violation. Plaintiffs have not disputed the fact that a single operational upset caused the September, 1990 BOD exceedances. The Court thus concludes that these separate exceedances are at most evidence of a single violation. With evidence of only one violation since 1986, plaintiffs have failed to create a genuine issue of material fact about whether there are continuing violations of defendants' NPDES permit for BOD. Thus, the evidence of BOD exceedances does not warrant the continuing jurisdiction of this Court.

 The final pollutant parameter which plaintiffs allege defendants continue to violate is Phosphorus. Plaintiffs present evidence of Phosphorus exceedanc-

es having occurred on June 11, 1986, February 15, 1988, and April 19, 1989. On September 10, 1990, defendants reported another exceedance in the amount of effluent from the Lima refinery. Defendants claim that two exceedances spaced 18 months apart are not evidence of an ongoing violation. Second, defendants claim that the causes of the February 15, 1988, April 19, 1989, and September 10, 1990 exceedances are completely unrelated. Finally, defendants claim that the September 10, 1990 exceedance was due to 25–year storm event, and therefore, as a matter of law this exceedance does not constitute a violation of their permit.

Of the reasons advanced by defendants, the Court finds the second reason most compelling. Defendants allege that the February 15, 1988 exceedance was caused by a malfunction in the sight glass which indicates the amount of phosphorus being added to the biological treatment system. Defendants introduce the affidavit of William Knowlton, supervisor of the Lima refinery waste water treatment plant, to support this claim. Knowlton Affidavit at 8. Mr. Knowlton asserts that the treatment system was given an overdose of phosphoric acid when the sight glass malfunctioned. Therefore, an exceedance in the amount of phosphorus in the effluent resulted on February 15, 1988. Id. Mr. Knowlton claims that the sight glass, was replaced, the problem corrected, and no further exceedance has occurred due to such a malfunction. Id.

In April of 1989, defendants claim that a shock load of organic materials to their treatment facility reduced the effectiveness of one of their biological reactors. To counter the damage that was done, defendants claim that they increased the phosphoric feed rate to the reactor to ensure it would recover. Upon doing so, they added too much phosphoric acid and an exceedance resulted. Mr. Grammas' affidavit supports these assertions. Grammas Affidavit at 19. Mr. Grammas states that remedial actions were taken.

In September of 1990, the Lima refinery suffered a 25–year storm event. As was mentioned in connection with the Court's examination of the BOD exceedances, plaintiffs do not dispute that fact, but allege simply that defendants treatment facility is inadequate. Plaintiffs' argument is just as lacking in persuasive value here as it was in connection with the BOD exceedances. Here, plaintiffs have failed to offer evidence that could demonstrate how three apparently unrelated exceedances constitute a continuing violation. Though plaintiffs' expert inexplicably opines that the microorganisms used by defendants will not respond to sudden change, plaintiffs offer no proof that this alleged defect was at the root of all three phosphorus exceedances. Again, the Court finds that it would be improper for plaintiffs to present such evidence to the trier of fact and then ask the trier of fact to speculate as to whether the defects it alleges were the cause of the exceedances. No genuine issue of fact appearing from plaintiffs' evidence of phosphorus exceedances, the Court finds that this evidence does not support jurisdiction.

The Court finds that plaintiffs have failed to establish a genuine issue of material fact as to the first part of the Fourth Circuit test: that there is no proof that violations continued on or after the date the complaint was filed. Likewise, the Court finds that there is an absence of genuine issue of material fact as to the second part of the test: that there is insufficient evidence from which a reasonable trier of fact could find a continuing likelihood of a recurrence in intermittent or sporadic violations. Plaintiffs' only evidence in this regard is the opinion of Dr. Mihelcic. Again, though he did not find it beneficial to expound upon the basis for his opinion, Dr. Mihelcic opined that defendants will continue to have violations of their NPDES permit in the future. Such unsubstantiated opinion is not enough to create a genuine issue of material fact in the face of the affidavits defendants submitted.

Since the Court has found no genuine issue of material fact present in the evidence presented by plaintiffs, summary judgment is proper. As defendants have

demonstrated that this Court lacks jurisdiction, defendants' motion for summary judgment must be granted and plaintiffs' claims must be dismissed.

THEREFORE, for the foregoing reasons, good cause appearing, it is

ORDERED that defendants' motion for summary judgment be, and hereby is, GRANTED; and it is

FURTHER ORDERED that plaintiffs' motion for partial summary judgment be, and hereby is, DENIED.